ACCEPTED
03-13-00760-CR
4406706
THIRD COURT OF APPEALS
AUSTIN, TEXAS
3/6/2015 3:50:50 PM
JEFFREY D. KYLE
CLERK

## No. 03-13-00760-CR

In the Third Court of Appeals
Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
3/6/2015 3:50:50 PM
JEFFREY D. KYLE
Clerk

# JAMES A. BROWN,
*Appellant,*

v.

# THE STATE OF TEXAS,
*Appellee.*

On appeal from the 331st Judicial District,
of Travis County, Texas
Trial Cause No. D1-DC-13-300630
The Honorable David Crain, Presiding Judge

# STATE'S BRIEF

ROSEMARY LEHMBERG
TRAVIS COUNTY DISTRICT ATTORNEY

WILLIAM G. SWAIM III
SPECIAL ASSISTANT DISTRICT ATTORNEY
State Bar Number 00785074
Post Office Box 1748
Austin, Texas 78767
Telephone: (512) 854-9415
Bill.Swaim@traviscountytx.gov

*March 6, 2015*                    ATTORNEYS FOR THE STATE OF TEXAS

ORAL ARGUMENT IS NOT REQUESTED

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ................................................................. i

INDEX OF AUTHORITIES ................................................................................. ii

STATEMENT OF THE CASE ............................................................................. 1

ISSUES PRESENTED ....................................................................................... 3

STATEMENT OF FACTS .................................................................................. 4

SUMMARY OF THE STATE'S ARGUMENT ....................................................... 6

ARGUMENT

Reply Point 1: The evidence of Brown's intent to harm by unlawful acts
           is legally sufficient to sustain the judgment of conviction
           for retaliation. ........................................................................ 8

Reply Point 2: A timely motion to quash was never presented to the court
           for a ruling, therefore this issue is not preserved for appeal. ........ 14

Reply Point 3: Appellant fails to discharge his burden of production in support
           of his claims of ineffective assistance of counsel. ......................... 16

PRAYER ....................................................................................................... 25

CERTIFICATE OF COMPLIANCE ...................................................................... 26

CERTIFICATE OF SERVICE ............................................................................. 26

# IDENTITY OF PARTIES AND COUNSEL

**Appellants:** JAMES ARTHUR BROWN

**Appellants' Counsel:**
Brian Y. Bernard
Tanisa Jeffers
Bernard & Associates
1203 Baylor St.
Austin, Texas 78703
(512) 478-5291
(512) 478-9827 Facsimile
attorneybernard@yahoo.com
tanisaL@hotmail.com

**Appellee:** TRAVIS COUNTY DISTRICT ATTORNEY'S OFFICE

**Appellee's Counsel:**
William G. Swaim III
Special Assistant District Attorney
P.O. Box 1748
Austin, Texas 78701
(512) 854-9415
(512) 854-9436 Facsimile
Bill.Swaim@traviscountytx.gov

# INDEX OF AUTHORITIES

**Statutes**                                                                          **Page**
TEX. CRIM. PROC. CODE ANN. ART. 1.14
    (West Supp. 2014) ................................................................................ 14


**Rules**
TEX. R. APP. P. 33.1................................................................................................ 14
TEX. R. APP. P. 38.1(i) .................................................................................. 16, 22


**Cases**
*Bodeker v. State*, 629 S.W.2d 65
    (Tex. Crim. App. 1981) ................................................................................ 11
*Brooks v. State*, 323 S.W.3d 893
    (Tex. Crim. App. 2010) ...................................................................................8
*Cooks v. State*, 240 S.W.2d 906
    (Tex. Crim. App.—2007) ............................................................................ 23
*Coward v. State*, 931 S.W.2d 386
    (Tex. App.—Houston [14th Dist.] 1996, no pet.) ...................................... 10
*Davis v. State*, 890 S.W.2d 489
    (Tex. App. —Eastland 1994, no pet.) ........................................................ 10
*Garcia v. State*, 57 S.W.3d 436
    (Tex. Crim. App. 2001) .............................................................................. 19
*Hooper v. State*, 214 S.W.3d 9
    (Tex. Crim. App. 2007) .............................................................................. 12
*Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781,
    61 L. Ed. 2d 560 (1979) ..................................................................... 8, 12, 13
*Jarrell v. State*, 537 S.W.2d 255
    (Tex. Crim. App. 1976) .................................................................................9
*In re B.M.*, 1 S.W.3d 204
    (Tex. App.—Tyler 1999, no pet.) .............................................................. 10
*Lawson v. State*, 775 S.W.2d 495
    (Tex. App. —Austin 1989, pet. ref'd) ........................................................ 11
*Manemann v. State*, 878 S.W.2d 334
    (Tex. App. —Austin 1994, pet. ref'd) ................................................... 10, 11
*Moreno v. State*, 755 S.W.2d 866
    (Tex. Crim. App. 1988) .............................................................................. 13

*Strickland*, 466 U.S. 668, 104 S. CT. 2052,
     80 L. Ed. 2d 674 (1984) ....................................................................... 19, 21

*Thompson v. State*, 9 S.W.3d 808
     (Tex. Crim. App. 1999) ........................................................................ 19

*United States v. Orozco-Santillan*, 903 F.2d 1262
     (9th Cir. 1990) ...................................................................................... 11

*Wayslina v. State*, 275 S.W3d 908
     (Tex. Crim. App. 2009) ........................................................................ 11

*Wilson v. State*, 398 S.W.2d 291
     (Tex. Crim. App. 1965) ........................................................................ 15

## STATEMENT OF THE CASE

Brown was charged by indictment with three counts of retaliation against a public servant, third degree felonies. CR 19-20. The indictment further alleged four previous felony convictions potentially enhancing the initial charges to second degree felonies. *Id.* On October 23, 2013, following a bench trial, the court found him guilty on all three counts of the indictment. CR 48, 52-55, 57-58. The court further found the enhancement paragraphs true. *Id.* That same day, the court assessed punishment and sentenced Brown to fifteen years in the Texas Department of Criminal Justice. *Id.*

Defense counsel filed a motion for new trial on October 31, 2013. CR 59-60. The next day, Brown filed a *pro se* motion for new trial. CR 61-67. Brown filed a *pro se* notice of appeal and "Motion to Appeal" on November 8, 2013. CR 71-76, 83.

No further court proceedings occurred, although, on December 16, 2013, the trial court issued a bench warrant for Brown's return from the Texas Department of Criminal Justice for a hearing January 8, 2014. CR 100. The court appointed counsel for Brown on January 7, 2014. CR 103. The trial court, in a letter dated December 22, 2014 and appended to Appellant's brief, explained the purpose of Brown's return to court:

1

Appellant filed a Motion for New Trial on October 21, 2013. Trial counsel filed a Motion for New Trial on November 1, 2013. Brown was set to come back to court on January 14, 2014. Brown refused to enter the courtroom. Thereafter, the Motion for New Trial expired by operation of law.

The court fully intended to reduce the sentence significantly but Brown refused to participate.

Brief for Appellant at 50.

# ISSUES PRESENTED

## Issue One

Whether the trial court's inferences from the testimony and evidence in finding Brown intentionally threatened unlawful acts are legally sufficient to uphold the conviction for retaliation?

## Issue Two

Whether the issue of Brown's *pro se* and oral motions to quash is even preserved, as no ruling was ever sought from the court?

## Issue Three

Whether Appellant has even presented for consideration his multiple claims of ineffective assistance of counsel, where he has not satisfied his burden of production under *Strickland v. Washington* or the Texas Rules of Appellate Procedure?

## STATEMENT OF THE FACTS

On March 28, 2013, James Arthur Brown was at the Travis County civil courthouse for a jury trial on the termination of his parental rights. 2 RR 53. Assistant Travis County District Attorney Jannice Joseph represented the State and CPS social worker Sara Laney, and the child's ad litem attorney, Cynthia Dyar, were involved the case. 2 RR 10, 37, 52. A jury returned a verdict terminating Brown's parental rights. 2 RR 53, 56. As the judge was addressing Brown, "he got angry and stormed out of the court." 2 RR 56. Immediately following the hearing, Joseph, Laney, and Dyar, the three complaining witnesses, encountered Brown outside the courtroom in the hallway by the elevators. 2 RR 17, 38, 61. Looking directly at them, he began screaming threats. 2 RR 22, 31, 39, 50, 61. Each stated that Brown's threats were repetitions and "slight variations" of "I will get you," "I know where you live," and, "Whatever happens, I don't care if I get the electric chair." 2 RR 39, 112. All three workers testified that they were afraid or felt they needed to be concerned for their safety. 2 RR 23, 40, 62.

Brown was arrested and later indicted for three counts of obstruction or retaliation against a public servant enhanced to a second degree felony allegation so prior felony convictions. CR 19. 20. Following a bench trial on October 23, 2013, Brown was found guilty of all three counts of retaliation. CR 48; 2 RR

4

112. The court also found true the enhancement allegations. *Id.* Immediately following, Brown, on his own motion, requested the court to quash the indictment. 2 RR 112-13. The judge explained that his motion was not timely whereupon Brown accused the judge of racism and was removed from the courtroom. 2 RR 113. The judge proceeded to sentencing with the defendant absent, referring on the record to Brown "yelling and screaming very violently" in his holding cell. 2 RR 116, 123. The court sentenced Brown to fifteen years in prison on each count.

Brown, on his own, filed a motion for new trial on October 31, 2013, and trial counsel filed a motion for new trial on November 1, 2013. CR 59, 61. No further court proceedings occurred although the Brown was returned on a bench warrant for hearing date listed as January 8, 2014. On January 14, 2014, Brown refused to enter the courtroom for the scheduled hearing, and his motion for new trial expired by operation of law. Brief for Appellant at 50.

5

# SUMMARY OF THE STATE'S ARGUMENT

## Reply Point One

The evidence of Brown's intent to harm by unlawful acts is legally sufficient to sustain the judgment of conviction for retaliation. The evidence in the record quickly narrows this legal analysis to Brown's intent to threaten and the unlawful acts alleged in the indictment. The trial court found that the State's evidence and the inferences derived therefrom proved the offense of murder and a wide range of possible criminal activity including aggravated assault and assault as alleged in the indictment, which are lesser included offenses of murder.

## Reply Point Two

A timely motion to quash was never presented to the court for a ruling, therefore this issue is not preserved for appeal. Brown filed two *pro se* motions to quash and presented an untimely, oral, *pro se* motion to quash after trial. With no ruling ever made on these motions, nothing is preserved for appeal here. Appellant apparently presents this issue to give voice to Brown's mistaken belief that merely filing his writings triggers relief.

## Reply Point Three

Appellant fails to discharge his burden of production in support of any of his claims of ineffective assistance of counsel. The multiple claims in this point of error are presented without support from the record and fall short of the first prong of the *Strickland v. Washington* analysis, Appellant's burden of production demonstrating deficient performance by trial counsel. These claims further run afoul of Tex. R. App. P. 38.1(i), requiring support from the record.

# ARGUMENT

## *Reply Point One*

**The evidence of Brown's intent to harm by unlawful acts is legally sufficient to sustain the judgment of conviction for retaliation.**

The Court of Criminal Appeals held that "the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010)(eliminating the separate factual sufficiency review). Under this standard a reviewing court "is required to defer" to the fact-finder's credibility and weight determinations. *Id.* at 894 (citing *Jackson v. Virginia*, 443 U.S. 307, 320, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979)).

In the instant case, Judge David Crain articulated that all three of the State's complaining witnesses were credible when finding Brown guilty on the three counts of the indictment. 2 RR 112. Each complainant explained her role in Brown's custody termination hearing the day of the offense, March 28, 2013: Janice Joseph, Assistant District Attorney as trial counsel; Cynthia Dyar, ad litem attorney for the child in the suit; and Sarah Laney, caseworker for Child Protective

8

Services. 2 RR 14, 35, 52-53. Brown testified at the trial and stated there that he knew that all three were public servants, and that they worked together to terminate his parental rights. 2 RR 103. All three complaining witnesses testified that immediately following the hearing they encountered Brown outside the courtroom by the elevators in the hallway. 2 RR 17, 38, 61. Brown looked directly at them while he was screaming threats. 2 RR 22, 31, 39, 50, 61. Each stated that the threats were repetitions and "slight variations" of "I will get you," "I know where you live," and, "Whatever happens, I don't care if I get the electric chair." 2 RR 39, 112. Even with their experience in and perspective of child custody proceedings, all three victims testified that they were afraid or felt they needed to be concerned for their safety. 2 RR 23, 40, 62. Sarah Laney testified that to her the phrase "electric chair" implied the offense of "murder". 2 RR 50. This testimony, found credible by the trial court, amply factually supports the indictment's allegation of intentional threats to the three women on account of their service as public servants.

It is the intent to threaten that is key to this type of criminal offense, not the intent to carry out the threat. *Jarrell v. State*, 537 S.W.2d 255, 257 (Tex. Crim. App. 1976). "[T]he statute does not require that the threatened retaliatory harm be imminent, nor does it require that the actor actually intend to carry out his

9

threat." *In re B.M.*, 1 S.W.3d 204, 207 (Tex. App.—Tyler 1999, no pet.); *Coward v. State*, 931 S.W.2d 386, 389 (Tex. App.—Houston [14th Dist.] 1996, no pet.); *Davis v. State*, 890 S.W.2d 489, 492 (Tex. App.—Eastland 1994, no pet.). Regardless of any testimony that he would not or did not intend to harm the victims, Brown's statements would still constitute threats under the statute.

The trial court's verdict and interpretation of the evidence as establishing Brown's intent to threaten is specifically supported by the context in which the threats were made. The Third Court in 1994 observed in a case involving a phone call threatening bodily injury, "The meaning of statements can only be interpreted by considering the context in which they are made." *Manemann v. State*, 878 S.W.2d 334, 338 (Tex. App.—Austin 1994, pet. ref'd). In the instant case, Brown's remarks are made repeatedly, immediately outside the courtroom where his parental rights had just been terminated, while directly looking at three people involved in bringing about that result, within minutes of the court's decision, while pacing agitatedly and with his mother trying to pull him away into an elevator.

Brown's statements in themselves satisfy the elements of the offense "threaten to harm by an unlawful act". A particular statement may be considered a threat under an objective standard where a reasonable person to whom the statement is communicated interprets the statement as a serious expression of

10

intent to harm or assault. *Manemann*, 878 S.W.2d at 337 (citing *United States v. Orozco-Santillan*, 903 F.2d 1262, 1265 (9th Cir. 1990)). The three women who were the object of Brown's threats all testified that they are experienced in such hearings where people are understandably upset, but that Brown's actions were distinctly threatening.

The trial court correctly interpreted Brown's threats as embracing the unlawful acts of aggravated assault or assault alleged in the indictment. Aggravated assault is a lesser included offense of murder. *Lawson v. State*, 775 S.W.2d 495, 499 (Tex. App.—Austin 1989, pet. ref'd). Assault is a lesser included offense of aggravated assault. One of the State's complaining witnesses testified that to her the phrase "electric chair" implied the offense of "murder". Where the State's evidence proves the greater offense, it necessarily proves any lesser included offenses. *Wayslina v. State*, 275 S.W3d 908, 910 (Tex. Crim. App. 2009); *Bodeker v. State*, 629 S.W.2d 65, 66-7 (Tex. Crim. App. 1981). While only the crime of "murder" was mentioned as an interpretation of Brown's comment "I know where you live, and I'll get the electric chair for what I do", as Judge Crain noted, "by implication, if something severe enough would be assaultive behavior, severe enough to get the electric chair would also include the lesser-included offenses of aggravated assault or assault." 2 RR 50, 112. The

11

judge further observed, "I think his statements implied a whole range of possible criminal activity, anywhere from assault up to a murder, and also including aggravated assault." 2 RR 73.

Appellant asserts that the video evidence introduced by the State at his trial is insufficient to sustain the conviction. The video evidence from security cameras in the courthouse hallways admittedly does not fully capture the offense. There is no sound and Brown appears on the edge of the video walking in and out of view. 3 RR State's Exh. #4. Given this context, the video evidence does not contradict the verdict, which is principally and easily supported by the testimony of the witnesses alone. In fact, the only statement conflicting with the video evidence is Brown's assertion, "That's not even the real video. My back was to them. They lying." 2 RR 74.

"The reviewing court must give deference to 'the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-9, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979)). Even if there were inconsistencies in the evidence, "Such a verdict must stand unless it is found to be irrational or unsupported by more than a 'mere modicum' of the evidence, with

12

such evidence being viewed under the *Jackson* light. Concrete application of the *Jackson* standard is made by resolving inconsistencies in the testimony in favor of the verdict." *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988).

"[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). The credible testimony of the State's witnesses and the reasonable inferences drawn from it by the trial court ensure this conviction is legally sufficient.

## Reply Point Two

**A timely motion to quash was never presented to the court for a ruling, therefore this issue is not preserved for appeal.**

In order to preserve for appeal a complaint about a court's ruling on a motion, the record must show that the motion was presented to the trial court, and that the trial court ruled on it, or refused to rule on it, whereupon the movant objected. TEX. R. APP. P. 33.1. Where a defendant fails to object to a defect in a charging instrument before the date trial begins, "he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other post-conviction proceeding." TEX. CRIM. PROC. CODE ANN. ART. 1.14 (West Supp. 2014).

While Brown, on his own, filed two motions to quash, they were apparently never ruled on by the trial court. CR 35, 42. Without any support from the record, Appellant states, "A trial before the court was commenced on October 23, 2013. The court overruled all pretrial motions at that time." Brief for Appellant at 14. The one motion to quash that *does* appear on the record was made by Brown after the trial was over, to which the Judge responded, "I believe your motion is not timely after the trial has occurred." 2 RR 113; TEX. CRIM. PROC.

14

CODE ANN. ART. 1.14 (West Supp. 2014). In *Wilson v. State*, the Court of Criminal Appeals addressed this issue directly.

> "He complains of the overruling of four motions to quash the indictment. None of these is shown to have been presented to the trial judge for his ruling. In the absence of a bill of exception, formal or informal, appellant's attack upon the indictment must be considered as though no motion to quash or exception to the indictment was filed."

*Wilson v. State*, 398 S.W.2d 291, 292 (Tex. Crim. App. 1965).

It appears that Brown assumed that merely filing a motion on his own was the equivalent of a proper legal objection as evidenced in his "Memorandum of Law," where he states, "The court erred, when upon notice by motion to quash indictment 'Sep. 04, 2013 and Oct. 09, 2013,' did not correct errors in the indictment for a fair and impartial trial." CR 81. As neither of his written motions nor his oral motion at trial were timely presented or ruled upon on the record, this issue is not preserved for appeal and should be overruled.

### *Reply Point Three*

**Appellant fails to discharge his burden of production in support of his claims of ineffective assistance of counsel.**

Appellant's initial presentation of this point of error appears to contend that ineffective assistance of counsel may be found in trial counsel's failure to withdraw and in that no hearing was held on Appellant's motion for new trial within seventy-five days. Within the argument, Appellant lists three additional grounds to support the claim: (1) trial counsel did not file any pretrial motions, (2) trial counsel did not call a key witness, and (3) trial counsel did not subpoena the individual responsible for the State's video evidence. A further claim is added alleging Brown was unrepresented during the thirty-day period in which to file a motion for new trial. Appellant provides insufficient factual support for these claims and, respectfully, this point of error should be overruled. TEX. R. APP. P. 38.1(i).

The State will initially respond to the three additional grounds all listed in a single paragraph of Appellant's brief. Brief of Appellant at 44. These three claims appear to be drawn from Brown's mostly hand-written motions. The claims and their sources are as follows:

16

1. His counsel did not file pre-trial motions,

   CR 73 (Mot. to Appeal, sec. IV; CR 65 (Mot. for New Trial, sec. XII)

2. His counsel did not call as a witness Valerie Brown, Appellant's mother, and

   CR 73 (Mot. to Appeal, sec. IV)

3. His counsel did not call "video surveillance personnel"

   CR 73 (Mot. to Appeal, sec. IV).

Brown's trial counsel did file pre-trial motions including a motion for discovery, a motion for psychiatric exam, and a request for appointment and funding of an investigator. CR 27, 40, 85-92. Appellant's brief is silent on what, if any, motions, should have been filed or as to what purpose. Therefore it is impossible to reach a conclusion that failure to file or litigate pre-trial motions was representation so deficient as to deprive Brown of a fair trial.

Brown's trial counsel did not call as a witness Valerie Brown, Appellant's mother, as the reporter's record clearly shows. Appellant's brief only describes her as being "present when the complained of language in the indictment was uttered." Brief for Appellant at 46. Brown himself only complains of her absence with no description of her possible testimony or purpose. CR 73 (Mot. to Appeal, sec. IV). Appellant's counsel expands on her possible role as a witness

17

in a supplementary motion filed with the Third Court describing her proposed testimony as follows:

> "Mrs. Brown will testify that Mr. Brown was upset at having his parental rights to his 3 year old [sic] daughter terminated just moments before, that he was planning to file a lawsuit because he felt his rights were being violated and that he never threatened anyone, but was simply "grieving."

Mot. to Abate Appeal and Remand for Hrg. on Mot. for New Trial and for Permission to File Out of Time Mot. for New Trial at 3. This single sentence without support from a sworn statement or other source is the only description of the substance of the testimony of the proposed witness.

Through cross-examination of one of State's complaining witnesses and courthouse deputies at the scene, trial counsel did develop the ideas that the Defendant was possibly upset at the recent parental rights termination judgment and possibly grieving. 2 RR 31-32, 87-89, 92. The State's complaining witnesses testified that at the scene Valerie Brown was trying to pull Brown into an elevator. CR 40, 46, 48, 62. Joseph specifically testified "and she was trying to tell him to stop, and she was trying to tell him no, nobody is going to do anything." CR 62. Further, the record indicates Valerie Brown was present at the trial, sitting behind the prosecuting attorney and pestering him. CR 73. In light of

18

these descriptions of her involvement, trial counsel's decision not to call her as a witness becomes a potential strategy to limit the damage to his client.

Courts generally presume that the action (or inaction) of trial counsel is trial strategy when the record is silent as to trial counsel's motivations regarding the case at bar. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). A claim of ineffective assistance of counsel will be upheld only where the record affirmatively supports such a claim. *Strickland*, 466 U.S. 668, 689, 104 S. CT. 2052, 2065, 80 L. Ed. 2d 674 (1984); *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001); *Thompson*, 9 S.W.3d at 812. Appellant fails here in his burden of production to demonstrate affirmatively from the record any deficient representation by trial counsel in not calling Valerie Brown as a witness.

Trial counsel did not call any witness related to the production of the courthouse video as the reporter's record clearly shows. Brown's complaint about the evidence appears to be that it was edited prejudicially. Brief of Appellant at 44; CR 63 (Mot. For New Trial, sec. XIII); CR 73 (Mot. To Appeal, sec. IV). The only direct mention of a potential witness is in Appellant's supplemental motion to the Third Court as follows:

> "_____ Flores will testify that there is possibly additional video evidence over and above the two "snippets" of video information entered as evidence in the trial before the court."

19

Mot. to Abate Appeal and Remand for Hrg. on Mot. for New Trial and for Permission to File Out of Time Mot. for New Trial at 3. This vague representation of the testimony of an only partially identified witness is also unsupported by a sworn statement or other source.

The State's video evidence consists of two duplicate pairs of videos depicting the relevant areas in the Travis County civil courthouse: the doorway to the courtroom where the termination hearing was held and, peripherally, one of the elevators in the central hallway. 3 RR State's Exh. #4. Three photographic exhibits put the locations of the video scenes into context. 3 RR State's Exh. #1-3; 2 RR 7-20. The pair of videos depicting the courtroom doors contain two time frames: 12:09:24 thru 12:09:35 and 12:11:21 thru 12:13:18. 3 RR State's Exh. #4. These may be the "snippets" and editing complained of by Appellant although not specifically identified in the brief or supplemental motion. The other pair of videos depicting the elevator area are continuous running from 12:12:01 – 12:14:55. 3 RR State's Exh. #4. The videos overlap in completely covering the period during which the threats were made. The first segment of the door video was for the State's purpose of demonstrating that Brown "stormed" out of the civil courtroom prior to the incident. 2 RR 37, 56.

The record does contain an explanation of trial counsel's decision regarding a "video surveillance witness":

> Mr. Brown has asked that I subpoena to this hearing the person with the most knowledge of the video operations at the old courthouse and the person who was responsible for deciding what video footage the Court got to see this morning. I've explained to Mr. Brown that I didn't think the Court would stand for that kind of subpoena, that it would be found irrelevant. So I did not.

2 RR 75.

Assuming *arguendo* that calling a video surveillance witness would have provided more information on the areas and timeframes filmed, appellant must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 693, 104 S. CT at 2067. Testimony at trial illustrated weaknesses in the State's video evidence by demonstrating that the video angle filming the elevator area was cutoff, that only the back of the defendant could be seen outside the elevator and that the camera angle did not display the location of the other involved persons. 2 RR 24, 26, 28, 79. There is no affirmative record support that additional testimony from any other person, let alone "____ Flores", regarding the production of the video recordings would have made any difference at all in the outcome. Appellant fails here in proving deficient representation by trial counsel in not calling a "video surveillance" witness.

Appellant's brief provides no factual support for and does not even develop the contention that ineffective assistance of counsel may be found in trial counsel's failure to withdraw and in that no hearing was held on Appellant's motion for new trial within seventy-five days. TEX. R. APP. P. 38.1(i). The record clearly shows that a hearing was set for the seventy-fifth day after trial counsel filed a motion for new trial. Trial counsel's motion was filed October 31, 2013. CR 59-60. The trial court bench-warranted Brown back from prison for a hearing January 14, 2014. CR 100; Brief for Appellant at 50. Further proof that trial counsel was still acting on behalf of Brown can be found in the court's order of appointment for trial counsel dated January 7, 2014. CR 103. Rhetorically, the State must ask, who does Brown contend moved the trial court to bench warrant him back within the seventy-five day time limit for action on the motion for new trial, if not his trial counsel? The January 14, 2014 hearing date was Brown's opportunity to alter the course of events, but he declined to even participate. Brief for Appellant at 50. To label trial counsel deficient here on this basis with no record support at all is unfair. Appellant utterly fails to discharge his burden of production on this particular aspect of his broad claim of ineffective assistance of counsel. TEX. R. APP. P. 38.1(i).

22

Appellant's final ineffective assistance claim alleges Brown was deprived of counsel during the thirty-day window for filing a motion for new trial. This claim is flatly refuted by the record. Trial counsel filed a motion for new trial on October 31, 2013, within thirty days of the trial on October 23, 2013. CR 59-60. A claim of deprivation of counsel during this period requires a showing that the defendant did not have an opportunity to file a motion for new trial. *See Cooks v. State*, 240 S.W.2d 906, 910-11 (Tex. Crim. App.—2007). Trial counsel is presumed to have adequately represented a defendant during this period, which a defendant can rebut. *Id.* Not only does Brown fail to rebut this presumption, the record affirmatively shows trial counsel acted properly. Appellant utterly fails to discharge his burden of production on this particular aspect of his broad claim of ineffective assistance of counsel.

Brown's real problem is that he spurned his opportunity for a potential reduction in his sentence and a chance for his trial complaints to be developed more fully, an opportunity that trial counsel impliedly engineered for him. The record shows a motion for new trial hearing was scheduled for January 14, 2014. Brown was bench-warranted back from prison and was available for his requested hearing. But he refused to enter the courtroom and participate. In the case at bar, Brown seeks to impute ineffective assistance to trial counsel based on his,

23

Brown's, own self-defeating actions. As Appellant has not discharged his burden of production on the alleged deficient acts of representation, Brown should not be allowed to prevail and cast blame on another for a disaster of his own making. The State respectfully requests that the Court overrule this point of error alleging ineffective assistance of counsel.

# PRAYER

For these reasons, the Travis County District Attorney, on behalf of the State of Texas, asks this Court to overrule the points of error and affirm the judgment of conviction for James A. Brown.

Respectfully submitted,

ROSEMARY LEHMBERG
TRAVIS COUNTY DISTRICT ATTORNEY

WILLIAM G. SWAIM III
SPECIAL ASSISTANT DISTRICT ATTORNEY
State Bar Number 00785074
Post Office Box 1748
Austin, Texas 78767
Telephone: (512) 854-9415
Bill.Swaim@traviscountytx.gov

ATTORNEYS FOR THE STATE OF TEXAS

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i), I hereby certify, based on the computer program used to generate this motion, that this motion contains 3,853 words, excluding words contained in those parts of the brief that Rule 9.4(i) exempts from inclusion in the word count.

/s/ William G. Swaim III
Special Assistant District Attorney

## CERTIFICATE OF SERVICE

I certify that, on this the 6th day of March, 2015, a copy of the foregoing motion was sent, via U.S. mail, email, or electronically through the electronic file manager, to the following attorney for the appellant:

Tanisa Jeffers, Esq.
Brian Bernard, Esq.
Bernard & Associates
1203 Baylor Street
Austin, TX 78703
Fax:          512.478.9827
Email:        tanisaL@hotmail.com
              attorneybernard@yahoo.com

/s/ William G. Swaim III
Special Assistant District Attorney